ROSA B. FITZGERALD, GENERAL ADMINISTRATRIX OF THE ESTATE OF LONNIE J. FITZGERALD, DECEASED, AND ROSA B. FITZGERALD, ADMINISTRATRIX *AD PROSEQUENDUM* OF THE ESTATE OF LONNIE J. FITZGERALD, DECEASED, PLAINTIFF-APPELLANT, v. DWIGHT R. G. PALMER, COMMISSIONER, STATE HIGHWAY DEPARTMENT OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued February 23, 1966—Decided May 2, 1966.

*Mr. Ira Rabkin* argued the cause for appellant (*Messrs. Molotsky, Rabkin & Gross,* attorneys).

*Mr. Alan B. Handler,* First Assistant Attorney General, argued the cause for respondent (*Mr. Richard Newman,* Deputy Attorney General, of counsel and on the brief; *Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. Plaintiff's decedent was killed when his automobile was struck by a piece of concrete weighing about 60 pounds dropped by an unknown person from an overhead crossing constructed by the State Highway Department. The event was unquestionably a criminal one. The culprit had carried the piece of concrete a considerable distance to the point from which it was released to the road below. The suit

is against the State Highway Commissioner, not individually, but in his official capacity. Plaintiff acknowledges the suit is against the State. The thesis of the wrong is that the State was negligent in its construction of the overpass in that it did not erect wire fences to prevent a criminal attack. The trial court granted a motion for judgment on the ground that the complaint did not state a cause of action. We certified the appeal before argument in the Appellate Division.

Plaintiff asks that we (1) end the State's immunity from suit and (2) find a failure to guard against such a criminal attack constitutes an actionable wrong.

The State's immunity from suit does not rest upon the notion that the State can do no wrong. Indeed the State can do wrong, so much so that it can expend public moneys to compensate for the wrong it does. In sustaining the legislative power to pay, we explain the State thereby merely recognizes a "moral" obligation, by which we mean only that the obligation is "moral" rather than "legal" because there is no machinery to compel the State to do what in justice it ought to do. Thus the State's "immunity" involves ultimately the question, which branch of government shall decide for the State when it shall pay? In the abstract, a question of that kind would seem "judicial" enough, in the absence of a controlling policy expression by the Legislature. But the judiciary could not enforce a judgment if it gave one. No money may be drawn from the State treasury but for appropriations made by law. *Const., Art.* VIII, § II, ¶ 2. The judiciary could not order the Legislature to appropriate money, or the Governor to approve an appropriation if one were made. *Gallena v. Scott,* 11 *N. J.* 231, 238–239 (1953); *cf. Baltzer v. State of North Carolina,* 161 *U. S.* 240, 16 *S. Ct.* 500, 40 *L. Ed.* 684 (1896). Nor would it do to issue a writ of execution to sell the State House or the courtroom furnishings. *Cf.* 49 *Am. Jur., States, Territories, and Dependencies,* § 104, *pp.* 319–320. Thus the problem arises from the circumstance that under our system of separation of powers, the judiciary, not controlling the purse strings, cannot act effectively alone.

Plaintiff recognizes that we could not compel satisfaction of the alleged wrong, but she asks that we nonetheless declare the justice of her cause in the hope that the other branches of government will abide by our view. *Cf.* Borchard, "Governmental Responsibility in Tort, V," 36 *Yale L. J.* 757, 802 (1927). There may be reported instances in which courts, having accepted controversies as to which they ultimately found they could not order relief because of the doctrine of separation of powers, nonetheless expressed their opinion upon the merits. But here we are asked to proclaim our power and willingness to give our views upon any and all claims against the State for the influence, if any, they may have upon our coordinate branches of government. We are asked to do the job now done in our State by committees of the Legislature and elsewhere at least in part by a court of claims, without any assurance that our coordinate branches of government will welcome our judgments or aid us to arrive at them.

Obviously the subject is delicate, involving as it does the relations among co-equal branches of government. We think the case before us is not the one in which to explore the power of the Court to enter that area or the wisdom of doing so. The reason is that the thesis of the claim of liability is itself too doubtful.

A private entrepreneur may readily be held for negligent omissions within the chosen ambit of his activity. But the area within which government has the power to act for the public good is almost without limit, and the State has no duty to do everything that might be done. Rather there is a political discretion as to what ought to be done, as to priorities, and as to how much should be raised by taxes or borrowed to that end. If government does act, then, when it acts in a manner short of ordinary prudence, liability could be judged as in the case of a private party. So if a road were constructed of a design imperiling the user, the issue of fault would present no novel problem. But whether a road should have four or six or eight lanes, or there should be dividers, or

circles or jughandles for turns, or traffic lights, or traffic policemen, or a speed limit of 50 or 60 miles per hour—such matters involve discretion and revenue and are committed to the judgment of the legislative and executive branches. As to such matters, the question is whether a judge or jury could review the policy or political decisions involved without in effect taking over the responsibility and power of those other branches. See *Amelchenko v. Borough of Freehold,* 42 *N. J.* 541, 550 (1964).

Here, an issue of that kind is involved. The overpass itself is sound and safe for the motorist and pedestrian who use it. It, however, presented to some unknown a setting for a criminal adventure. Most roads necessarily provide opportunities for some criminal attack. Plaintiff says the antidote would be a wire fence of unspecified height. In another case it might be said that lighting or better lighting would do the job. Indeed the problem may come more within policing than road building. Upon either view, there is the question of how much money should be raised and how to deploy what is available, in the endless effort against crime. We mention the difficulties which would attend the present claim if the Court took jurisdiction of it, to explain why this case does not move us to wrestle with the far-reaching proposal that the judiciary give advisory opinions to all who feel aggrieved by what the State does or does not do.

The judgment is affirmed. No costs.

JACOBS and SCHETTINO, JJ., concurred in result.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.