160 N.J. Super. 1 (1978)
388 A.2d 1019
JOSEPH COSTA, GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATES OF EDWARD J. FLOCCO, JR. AND PHYLLIS FLOCCO, PLAINTIFF-APPELLANT,
v.
ALBERT J. JOSEY, DEFENDANT, AND STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1978.
Decided May 22, 1978.
*3 Before Judges ALLCORN, HORN and FURMAN.
Mr. Joseph T. Afflitto argued the cause for appellant (Messrs. Diamond, Diamond & Afflitto, attorneys).
Mr. Thomas F. Marshall, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General, attorney; Mr. William F. Hyland, former Attorney General; Ms. Erminie Conley, Deputy Attorney General, of counsel).
The opinion of the court was delivered by HORN, J.A.D.
Shortly after midnight on November 11, 1974 Edward J. Flocco, Jr., owner and operator of an automobile, and his wife Phyllis, a passenger in the car, while proceeding in a westerly direction on State Highway 4 in the vicinity of the Webster Avenue bridge in Teaneck, were killed as the result of a collision with an automobile driven by one Albert J. Josey that had come over from the opposite side of the highway.
At said time and place Route 4 was a four-lane highway having two lanes and a shoulder for each direction, east and west. Opposing traffic lanes were separated by a concrete barrier about 15 inches high, 6 inches wide at the top and about 24 inches wide at the base. The face of each side was concave.
Josey had been proceeding in an easterly direction on the eastbound side of Route 4 in the outside or slower lane, at *4 a speed estimated by him at 50 miles an hour, the area speed limit, but estimated by a witness, Neil Bookspan, at 60 to 65 miles an hour. According to Josey, an unidentified vehicle started to move toward his car, so that he, in turn, directed his car to the inside or faster lane, to avoid a collision with the unidentified vehicle. In so doing he says that he struck the divider: "I didn't have complete control [of the car]. But, as I rode down a little ways more, it just  something just hit, bumped, and then the car went right over in the air."
Bookspan's version given to the police was that he first saw the Josey car with sparks being emitted underneath the front of the vehicle at the driver's seat. The car at this time was astride the line dividing the "fast and slow" lanes in the eastbound side. He then saw the car through his rear-view mirror climb up over the divider and it "actually flew in the air over the fast lane in the westbound lanes." It struck the Flocco car in the left front.
The investigating police officers recorded that the weather was clear and dry; that physical evidence found at the scene revealed that the front left bumper of Josey's automobile struck the divider on the eastbound side, leaving tire marks for 30 feet on the divider. It then straddled the divider for approximately 50 feet before going over to the westbound side of the highway, and then scraped the west side of the divider for approximately 30 feet while heading east. It continued east for 64 feet into the right lane of the westbound side of the highway, where it struck the Flocco car, forcing the latter backward about 120 feet "into the bridge [abutment?]." The Josey vehicle finally came to rest about 100 feet east of the bridge in the left, westbound lane.
Plaintiff Joseph Costa, as general administrator and administrator ad prosequendum of the respective estates of Mr. and Mrs. Flocco, after compliance with the notice provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:8-8, instituted an action for the wrongful deaths of his decedents *5 against Josey and the State of New Jersey, Department of Transportation (Department), on the ground that their negligence was a proximate cause of the collision.
Josey failed to respond to the action and a default was entered against him. The State duly answered and cross-claimed for contribution. After the parties were afforded full discovery the State successfully moved for summary judgment on the ground that it was immune from liability for the conduct attributed to it as a basis of liability to plaintiff. Plaintiff then appealed.
Plaintiff's claim that the State is liable is essentially posited upon a claim of the latter's negligence in relation to the barrier or divider which separated the opposing lanes of traffic.
Route 4 was constructed in the early 1930s with a reinforced concrete surface. In 1955 the State Highway Engineer and the State Highway Commissioner (then Dwight R.G. Palmer) approved plans for construction of a 19-inch concrete center divider on Route 4 in the Township of Teaneck. In 1956 the divider was constructed in accordance with the plans.
According to defendant, the divider when installed in 1956 was 19 inches high and included a 4-inch base with vertical facing which provided for future resurfacing of the adjacent road surface during the useful life of the divider. The vertical facing also acted to provide some warning to alert drivers who inadvertently contacted it at a slight angle. In 1962 the Department made the decision to resurface 1.098 miles of Route 4 in Teaneck. A design was created and plans were approved by the State Highway Engineer and the State Highway Commissioner. The resurfacing was accomplished according to the approved plans. Specifically, the resurfacing project placed 2 1/2 inches of fine aggregate bituminous concrete on the concrete surface in the area which became the scene of the recited accident. This application reduced the 4-inch divider base to approximately 1 to 1 1/2 inches of vertical facing.
*6 In 1974 Bernard Olszonewski, an assistant engineer with the Bureau of Maintenance of the Department and the coordinator of the Department's statewide resurfacing program, with authority to review applications for each region in the State for resurfacing and to determine which sections of the state highways should be resurfaced, created resurfacing plans and specifications[1] which thereafter were approved by the Department's Director of Engineering and Operations, and the Chief Engineer, Construction and Maintenance. These plans included the resurfacing of the area in question for the second time since 1956. When concluded in 1974, before the described tragic accident, the resurfacing, approximately one inch in thickness at the divider on the eastbound side thereof, practically obliterated the remainder of the four-inch vertical facing base, leaving the divider as it appeared at the time of the collision, about 15 inches high.
The trial judge, in entering summary judgment for defendant, determined that there was no genuine issue as to any material fact, R. 4:46-2, and that defendant's activities, claimed to have constituted negligence, "arose out of the design and/or plan and improvement to Route 4 and the resurfacing * * *." In so holding the judge relied on the Tort Claims Act, N.J.S.A. 59:4-6, which provides:
Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.
*7 Actually, defendant's thesis is that even if, as is contended by plaintiff, the original installation of the divider with its four-inch vertical-facing base was in fact not designed with the concept of future resurfacings to ultimately obliterate the four-inch facing and lower the height of the divider, still the subsequent resurfacing resulted from a plan and design, and also constituted an "improvement" of the highway within the meaning and intent of N.J.S.A. 59:4-6  discretionary acts which were equally exonerated as a basis of liability.
Plaintiff's first line of attack upon the effect of this statute does not rest upon a claim of lack of immunity of the original construction. Rather, he contends, an issue of fact was raised as to whether the four-inch base was designed for future resurfacings or was designed as a permanent safety factor built into the divider. For this he relies on his engineering expert's opinion that the successive repavement of the roadway was negligent in eliminating "the vertical curb at the bottom of the barrier and reducing the overall height of the barrier" and thus facilitating "the elevating action at the bottom of the curved sides of the barrier."[2] He also cites the deposition of defendant's expert, Kuperstein, who acknowledged that the four-inch vertical base was, in fact, designed to prevent "vaulting," and who later stated that its primary purpose was to provide an area for future resurfacing.
Plaintiff suggests that the resurfacing activities were merely acts of maintenance which were not discretionary in nature and were therefore not insulated as a basis of the State's liability under N.J.S.A. 59:4-2, which reads:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous *8 condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
N.J.S.A. 59:4-1(a) defines "dangerous condition" as a condition which creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used. In the view of this case that we take, we need not reach the question of whether the divider as it was situate constituted a dangerous condition within said definition. Cf., however, Oram v. N.J. Bell Tel. Co., 132 N.J. Super. 491 (App. Div. 1975); Monaco v. Comfort Bus Lines, Inc., 134 N.J.L. 553 (E. & A. 1946).
We do not agree that N.J.S.A. 59:4-2 is applicable. We are persuaded that defendant's activities were immunized from liability for injury, either as discretionary under N.J.S.A. 59:2-3(a)[3] or as a plan or design under N.J.S.A. 59:4-6.
In relying upon N.J.S.A. 59:4-2 plaintiff contends that the liability of a public entity in the maintenance of public property is "reserved" thereunder and that the liability sections of N.J.S.A. 59:4 are independent of the immunity sections of the act.
*9 But in so relying on this section plaintiff overlooks the intention of the Legislature in enacting the Tort Claims Act, as expressed in N.J.S.A. 59:1-2 and N.J.S.A. 59:2-1:
* * * [T]he public policy of this State [is] that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration. [N.J.S.A. 59:1-2]

* * * * * * * *
a. Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
b. Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person. [N.J.S.A. 59:2-1][4]
As we interpreted the Tort Claims Act in McGowan v. Eatontown, 151 N.J. Super. 440, 448 (App. Div. 1977) and Wuethrich v. Delia, 155 N.J. Super. 324, 326 (App. Div. 1978), the sections of the act which authorize recovery against a public entity are subject to the general immunity conferred therein. The Legislative Comment to N.J.S.A. 59:2-1 in part reads:

* * * * * * * *
Subsection (b) is intended to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions. It is anticipated that the Courts will realistically interpret both the statutory and common law immunities in order to effectuate their intended scope. [Emphasis supplied]
*10 And in the Legislative Comment to N.J.S.A. 59:4-6 it is stated:
This section is intended to grant a public entity and a public employee complete immunity for injuries resulting from a plan or design of public property when it has been officially approved by an authorized body. This broad immunity is prompted by the fact that approval of plans or designs is peculiarly a function of the executive or legislative branch of government and is an example of the type of highly discretionary governmental activity which the courts have recognized should not be subject to the threat of tort liability. See Fitzgerald v. Palmer, 47 N.J. 106, 110, 219 A.2d 512 (1966); Hughes v. County of Burlington, 99 N.J. Super. 405, 240 A.2d 177 (App. Div. 1968). In addition, this particular area of governmental activity provides a very broad and extensive amount of exposure to liability against which the State would have difficulty providing economical and adequate protection. This immunity is similar to the immunity provided by judicial decision in the State of New York, see Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960) and by legislation in the State of California. Cal. Gov't Code, § 830.6.
Plaintiff also urges that in any event the decision to resurface was ministerial and therefore not immune under N.J.S.A. 59:2-3. Specifically, he says that the deposition of Olszonewski shows that the basis for deciding whether this particular section of the roadway should be repaved was by visual observation and was not a "high level policy decision." Consequently, the resurfacing should not be considered "discretionary" for purposes of either N.J.S.A. 59:2-3 or N.J.S.A. 59:4-6.
This thesis is partly answered adversely to plaintiff by what we have already stated concerning the resurfacing as being part of either the original planning or as an independent plan and design subsequently made. The differences between discretionary activities and ministerial activities may not always be clearly apparent. See Czyzewski v. Schwartz, 110 N.J. Super. 255, 260 (App. Div. 1970).
The dichotomy between discretionary and ministerial acts generally depends on whether the decision is a high-level *11 policy decision, Bergen v. Koppenal, 52 N.J. 478, 480 (1968), or a low-level one, Wuethrich v. Delia, 134 N.J. Super. 400, 411 (Law Div. 1975), aff'd supra, 155 N.J. Super. 324. See also, Logan v. No. Brunswick Tp., 129 N.J. Super. 105 (App. Div. 1974), certif. den. 66 N.J. 328 (1974); Czyzewski v. Schwartz, supra 110 N.J. Super. at 261-262.
Two recent cases furnish much light on the instant issue as well as the controversy in general: McGowan v. Eatontown, supra, and Cobb v. Waddington, 154 N.J. Super. 11 (App. Div. 1977). McGowan demonstrates the type of negligent maintenance of a highway which is not immunized from liability. The court held that the State might be liable for its negligent failure to ameliorate a hazardous accumulation of ice which resulted from a pool of water combined with freezing temperatures. It was carefully noted that:
* * * [P]laintiff does not claim negligent plan or design of the section of the highway where the accident occurred either by way of original construction or improvements. Specific immunity as conferred by the statute would defeat such a claim. [151 N.J. Super. at 446-447]
In Cobb v. Waddington, supra, the court sustained a summary judgment entered in favor of the State and its highway contractor where plaintiff sought damages of the State and the contractor for injuries sustained by him when his automobile was forced off the roadway by an unidentified motor vehicle into collision with traffic-channelization barricades. The court found that the selection of the type of barricades and their configuration on the highway reflected the exercise of judgment and discretion of a public entity within the sense of N.J.S.A. 59:2-3(a) and formed part of a plan or design of public property contemplated by N.J.S.A. 59:4-6(a).
So in the case at bar and apart from the question of plan or design, the matters of resurfacing, when, where *12 and how, were high-level discretionary decisions falling within the appropriate exclusive jurisdiction of the government to decide, on the same basis as we mentioned in Fitzgerald v. Palmer, supra:
* * * [W]hether a road should have four or six or eight lanes, or there should be dividers, or circles or jughandles for turns, or traffic lights, or traffic policemen, or a speed limit of 50 or 60 miles per hour  such matters involve discretion and revenue and are committed to the judgment of the legislative and executive branches. As to such matters, the question is whether a judge or jury could review the policy or political decisions involved without in effect taking over the responsibility and power of those branches. [47 N.J. at 109-110]
See also, Aebi v. Monmouth Cty. Highway Dept., 148 N.J. Super. 430 (App. Div. 1977).
Plaintiff also suggests that N.J.S.A. 59:4-6 does not provide an absolute immunity against all suits and that in the leading case of Weiss v. Fote, supra, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960), the Court of Appeals said:
* * * Although a jury verdict is to be highly regarded, it is neither sacrosanct nor preferable to the judgment of an expert public planning body. For this reason, liability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan either was evolved without adequate study or lacked reasonable basis. [200 N.Y.S.2d at 415, 167 N.E.2d at 68]
Notwithstanding this utterance by that court in what is considered as one of the outstanding expositions of law on the subject of sovereign immunity, we must reject the concept mentioned by it insofar as our act is concerned. A fair reading of the Tort Claims Act leaves no room for such interpretation. As stated in the above quotation from the Legislative Comment to N.J.S.A. 59:4-6, this section *13 was intended to grant complete immunity,[5] as well as perpetual immunity. See Rodgers v. Passaic Housing Auth., 139 N.J. Super. 569 (App. Div. 1976), certif. den. 71 N.J. 337 (1976). The Weiss v. Fote concept apparently does not comprehend a complete immunity. It was obviously not intended by our Legislature in its enactment of the Tort Claims Act that the preplanning and predesigning process might be the subject of reexamination in each case. We may not inquire into the preplanning or predesigning stage to ascertain whether there was negligence on the part of those who were charged with effecting the plans or designs. Cf. McGowan v. Eatontown, supra, 151 N.J. Super. at 449.
The principal premise of affording complete immunity has been expressed in terms of "whether a judge or jury could review the policy or political decisions involved without in effect taking over the responsibility and power of these other branches." Fitzgerald v. Palmer, supra 47 N.J. at 110; Hoy v. Capelli, supra 48 N.J. at 88; Amelchenko v. Freehold, supra 42 N.J. at 550. And, as stated in Weiss v. Fote, supra, 200 N.Y.S.2d at 415, 167 N.E.2d at 67:
* * * In the area of highway safety, at least, it has long been the settled view, and an eminently justifiable one, that courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits; something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public. No such evidence was offered here.
We have not overlooked the various other reasons mentioned in the report of plaintiff's engineering expert as to the alleged negligent resurfacing of the highway and *14 which allegedly contributed to the collision. These include (a) the failure to raise the height of the barrier to 32 inches (done in 1975); (b) providing a distance of two feet between the bottom edge of the barrier and the left lane of the eastbound side of the highway, and (c) constructing the barrier of concrete instead of using steel rails or guards. However, these additional claims of negligence do not add anything to plaintiff's contentions, since our view is bottomed on the immunity provided by the Tort Claims Act in the circumstances.
For the foregoing reasons the trial judge properly resolved on the motion for summary judgment that there was no liability on the part of defendant. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954); Kugler v. Tiller, 127 N.J. Super. 468, 476 (App. Div. 1974).
Affirmed.
NOTES
[1] Olszonewski specified the type of material to be used, the thickness to be applied and the order of priority.
[2] Meaning that the configuration of the divider had the effect of propelling a vehicle which struck it over the divider and into oncoming traffic.
[3] "(a) A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity; * * *."
[4] Before this enactment our Supreme Court was nearing, if it had not reached, a somewhat opposing view in its struggle to bring about more realistic and logical rules of sovereign immunity. B.W. King Inc. v. West New York, 49 N.J. 318, 325 (1967). See also, Willis v. Conservation & Ec. Dev. Dept., 55 N.J. 534, 538 (1970); Hoy v. Capelli, 48 N.J. 81, 86 (1966); Amelchenko v. Freehold Borough, 42 N.J. 541, 550 (1964).
[5] In Hoy v. Capelli, supra 48 N.J. at 84, Justice Hall noted then that "[e]ven in the case of a so-called governmental activity * * * immunity is no longer complete by any means." As observed, we held that the act grants complete immunity.