162 N.J. Super. 347 (1978)
392 A.2d 1229
TERESA ELLISON AND ALFRED ELLISON, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
HOUSING AUTHORITY OF THE CITY OF SOUTH AMBOY, B.J. LUCARELLI & CO., INC., AND AMERICAN HOUSE OF ALUMINUM, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1978.
Decided September 28, 1978.
*348 Before Judges CONFORD and PRESSLER.
Mr. Christopher R. Wood argued the cause for the appellants (Messrs. Rafano and Wood, attorneys, Mr. Frederick D. Roselli and Mr. Christopher R. Wood on the brief).
Mr. Leonard J. Tafro argued the cause for the respondent, Housing Authority of the City of South Amboy (Messrs. Adams, Adubato, Tafro & Connelly, attorneys).
No appearances for B.J. Lucarelli & Co., Inc. and American House of Aluminum.
The opinion of the court was rendered by PRESSLER, J.A.D.
This case, arising under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., requires our construction and application of that provision thereof, *349 N.J.S.A. 59:4-6, which accords a public entity plan and design immunity.
Plaintiffs, pursuant to leave granted, appeal from a summary judgment dismissing their complaint against defendant Housing Authority of the City of South Amboy (Authority). They contend that the trial judge erred in concluding that the record before him evinced no genuine dispute of fact in respect of the Authority's claim of immunity from liability pursuant to N.J.S.A. 59:4-6. We agree that the motion for summary judgment was improvidently granted and accordingly reverse and remand for trial.
According to plaintiffs' proofs, they were, on July 11, 1976, tenants of an apartment in a housing project owned by the Authority and constructed by it some 25 years earlier. On that date plaintiff Teresa Ellison sustained injuries when she fell off a concrete porch at the front entrance of her apartment after being struck by the screen door at the entranceway. It is her theory of the case, supported by her expert's report, that the proximate cause of the accident was a dangerous condition of the premises created by the juxtaposition of the screen door in relation to the concrete porch. More specifically, it was her expert's opinion that the dangerous condition resulted from "the undersized depth of the exterior concrete platform (34") and the direction of swing of the self-closing screen door. The screen door, being spring hung, can virtually strike a person and sweep him off the narrow platform. The condition is aggravated by the limits of the screen door swing (approximately 75° instead of 90° )." It was his further opinion that the dangerous condition could be satisfactorily remedied by hinging the screen door to the opposite jamb or enlarging the platform. Plaintiffs' proofs also included documentary evidence that within three years prior to her fall two virtually identical accidents had occurred in the housing project and that the Authority had been advised by its own *350 insurance carrier that the manner in which the screen doors were hung was the causative factor and should be remedied.
It is evident that these facts, if proved at trial, would support a prima facie case of actionable negligence on defendant's part. See N.J.S.A. 59:4-2, expressly declaring the liability of a public entity for
* * * injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.[1]
And see, e.g., Meta v. Cherry Hill Tp., 152 N.J. Super. 228 (App. Div. 1977); McGowan v. Eatontown, 151 N.J. Super. 440 (App. Div. 1977); Whaley v. Hudson Cty., 146 N.J. Super. 76 (Law Div. 1976).
The Authority, as indicated, sought to avoid the liability consequence resultant from application to the facts here of N.J.S.A. 59:4-2 by relying on the immunity provision of N.J.S.A. 59:4-6, which provides in full as follows:
Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance *351 of the construction or improvement by the Legislature or [by] the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.
We do not doubt that N.J.S.A. 59:4-6 was intended to constitute an exception to the general liability provision of N.J.S.A. 59:4-2 and must be so construed. See, e.g., Rodgers v. Passaic Housing Auth., 139 N.J. Super. 569 (App. Div. 1976). And see Johnson v. Southampton Tp., 157 N.J. Super. 518 (App. Div. 1978). See, also, the 1972 Comment following the text of the section. Nor, however, do we doubt that a public entity's claim of immunity thereunder, particularly in view of N.J.S.A. 59:4-2, is a matter of affirmative defense as to which it bears not only the burden of pleading but also the burden of proof. See, generally, Montag v. Bergen Bluestone Co., 145 N.J. Super. 140, 148-149 (Law Div. 1976). We are further satisfied that a fair reading of this immunity provision compels the conclusion that the prerequisite fact which must be proved in order for the burden to be deemed to have been successfully carried is that the specific design or plan detail alleged to constitute the dangerous condition was the subject of prior governmental approval or in conformity with prior approved standards. Thus, in order for the Authority to have prevailed on this motion it would have had to have come forward with proof of a nature and character which would exclude any genuine dispute of the fact that both the manner in which the screen door was hung and the size of the concrete platform were included in governmental approval of the plans or specifications for the project since the dangerous condition allegedly resulted from the combination of these two construction details.
The proof offered by the Authority in support of its summary judgment motion patently did not meet these requirements. The proof consisted exclusively of a certification by its executive director, who has continuously held *352 that position for the last 28 years and hence when this project was both conceived and constructed. The certification recites his personal knowledge of general approval of the project by the Federal Housing Authority's Regional Office in New York City in the early 1950s, his personal recollection that "the plans and specifications approved by the FHA provided for storm doors which opened from the outside to the center of the concrete platform," his inability to locate in his own office any "written verification from the FHA with respect to the approval of the plans," and his personal assurance that no construction was undertaken without approval by the FHA. The certification does not suggest, however, that he attempted to obtain a copy of the FHA-approved plans from any of the likely sources of availability such as the municipal building inspector's office or the FHA itself. Nor was there an offer pursuant to Evid. R. 63(17) of a certificate by the custodian of the records of these or any other public office reciting the search for and failure of location of FHA-approved plans or specifications.
We do not mean to suggest that in the absence of satisfactory documentary evidence the Authority would necessarily be foreclosed from proving the critical fact upon which the immunity must be predicated by way of the testimonial recollection of one having personal knowledge thereof. But if that is what it ultimately relies on, then clearly plaintiffs must have the opportunity at trial to test the accuracy and credibility of such testimonial recollection. Such matters are not resolvable by way of summary judgment motions. Cf. Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482 (1956). Obviously, the trier of the fact is not obliged to accept as true the naked assertion by an administrator, not himself an architect, engineer or builder, that some 25 years after the fact, he has a fortuitous specific recall of the inclusion in the overall project approval of the details relating to these two relatively minor items among hundreds of other such items. Nor *353 does the fact of general FHA approval of the project, which is certainly presumable from its financing thereof, necessarily imply either that every design detail thereof was approved or specified or that actual construction in no material way deviated from such design or specification details as were approved. Obviously, therefore, the material fact here was not proved beyond dispute within the intendment of the summary judgment rule and the motion should have been denied.
Our holding herein that defendant may proceed at trial to prove the facts supporting its claim to immunity subsumes our rejection of plaintiffs' alternative contention that the perpetuation of this known design defect constitutes negligent maintenance of the premises by public employees which removes this cause of action from the immunity bar of N.J.S.A. 59:4-6. We cannot but agree that the public interest may be disadvantaged by affording perpetuity of immunity in respect of a design defect which not only becomes known to the public entity but which may also be relatively simple and inexpensive to remedy. Clearly, a remedial impulse can hardly be encouraged by the certainty that no liability will attach by reason of a failure to take remedial action. Nevertheless, we cannot ignore the Legislature's express intention. The Comment, supra, specifically explains that
It is intended that the plan or design immunity provided in this section be perpetual. That is, once the immunity attaches no subsequest event or change of conditions shall render a public entity liable on the theory that the existing plan or design of public property constitutes a dangerous condition. After several years of difficulty with this immunity in California, the California Supreme Court adopted a contrary approach and concluded that plan or design immunity was not perpetual in California. See State v. Baldwin, 6 Cal.3d 424, 99 Cal. Rptr. 145, 491 P.2d 1121 (1972).
After consideration, this approach has been specifically rejected as unrealistic and inconsistent with the thesis of discretionary immunity  that a coordinate branch of government should not be second-guessed by the judiciary for high level policy decisions.
*354 The Authority is consequently entitled to its claimed immunity if it can prove the requisite factual basis therefor.
Reversed and remanded for trial.
NOTES
[1] N.J.S.A. 59:4-1 (a) defines a dangerous condition as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-3(a) provides that "A public entity shall be deemed to have actual notice of a dangerous condition * * * if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character."