JOSEPH COSTA, GENERAL ADMINISTRATOR AND ADMINISTRATOR *AD PROSEQUENDUM* OF THE ESTATE OF EDWARD J. FLOCCO, JR., AND PHYLLIS FLOCCO, PLAINTIFF-APPELLANT, v. ALBERT J. JOSEY, DEFENDANT, AND STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DEFENDANT-RESPONDENT.

Argued February 5, 1979—Decided May 17, 1979.

Mr. *Joseph T. Afflitto* argued the cause for appellant (*Messrs. Diamond, Diamond & Afflitto*, attorneys).

Mr. *Stephen Skillman*, Assistant Attorney General, argued the cause for respondent State of New Jersey (*Mr. John J. Degnan*, Attorney General of New Jersey, attorney; *Ms. Erminie L. Conley*, Assistant Attorney General, of counsel; *Mr. Thomas F. Marshall*, Deputy Attorney General, on the brief).

PER CURIAM. The members of the Court being equally divided, the judgment of the Appellate Division is affirmed.

SCHREIBER, J., dissenting. This case projects for this Court's review for the first time an interpretation of those provisions in the New Jersey Tort Claims Act, *N. J. S. A.* 59 :1–1 *et seq.*, which immunize public entities from liabilities arising out of dangerous property conditions due to their plan or design. The property is a state-owned highway and the particular exemption provisions are *N. J. S. A.* 59 :4–6 and *N. J. S. A.* 59 :2–3.

Joseph Costa, as general administrator and administrator *ad prosequendum* of the estates of Edward J. Flocco, Jr. and his wife, Phyllis Flocco, had instituted a wrongful death action against Albert J. Josey and the New Jersey Department of Transportation. Edward J. Flocco and his wife were killed instantly in an automobile accident on November 11, 1974 on Route 4 in Teaneck. They were survived by their five daughters.

Josey, driver of the other vehicle involved, defaulted. The Department of Transportation's motion for summary judgment was granted. The Appellate Division affirmed, 160 *N. J. Super.* 1 (1978), and we approved plaintiff's petition for certification. 78 *N. J.* 335 (1978).

Numerous depositions, affidavits, reports, and drawings had been submitted to the trial court. Following the traditional guideline that the facts and inferences should be viewed favorably from the plaintiff's point of reference, *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67 (1954), I find that the following factual pattern emerges.

On November 11, 1974 at 12:30 A.M., Mr. and Mrs. Flocco were proceeding westbound on Route 4 in Teaneck. At the same time Albert Josey was driving at about 50 miles per hour, the speed limit, in the eastbound lanes. Another vehicle knicked Josey's car on the right side, causing it to sway sharply to the left and strike the concrete divider which separated the east and westbound lanes. Josey lost control of his car which scraped along the divider, went up in the air, and landed in the westbound lanes. His car then collided head-on with the Floccos'.

The crux of the case against the Department of Transportation concerned the barrier dividing the roadway. It had been initially installed in 1956 in accordance with plans of the Chief Engineer of the Department. The barrier had a 30″ wide base and a height of 19″. The bottom 3″ on each side of the barrier were perpendicular to the base; then followed a 1″ transition distance after which the concrete curved in a gradual concave manner to the top. The distance across the top was 7″. Thus, the 30″ base was reduced to 7″ at the top, the reduction occurring over a 16″ distance. The distance from the bottom edge of the barrier on each side was approximately two feet from the edge of the left lane.

In 1962 the Department of Transportation resurfaced the road with 2–½″ being added to the surface next to the barrier. In 1974 the Department's maintenance personnel resurfaced the road again with 1″ being added to the surface next to the barrier. These resurfacings were ordered by the Assistant Engineer in the Department of Transportation, after he had made personal inspections, in which he had observed the roadway was worn. The resurfacings eliminated

the 3″ facing on the barrier, so that the curvature on the side of the barrier commenced at road level and the overall height of the barrier was reduced to approximately 15″. In 1975 the barrier was replaced by one 32″ high.

The primary purpose of the divider was to separate the east and westbound traffic. Vehicles which struck the barrier would be redirected into their proper lane of traffic. When initially designed in 1955, no engineering standards or practices governed the height of road dividers. Acceptable designs subsequently called for heights greater than 19″ and by the late 1960's good engineering practice called for such barriers to be 29″–32″.

At the very time when the Department of Transportation was reducing the height of the barrier to 15″, good engineering practice was calling for elevating its height to 32″. Furthermore, elimination of the facing increased the risk of a vehicle vaulting over the barrier. Because its wheels would first come in contact with the curved concrete, the car would tend to travel upward, rather than caroming off the original vertical facing. The State expert's report explained that "[t]he use of low vertical faces eliminates the possibility of a vehicle vaulting (jumping or 'flying over') the barrier." The report of plaintiff's expert had a similar exposition:

A wheel rolling onto the lower part of this curved surface receives an upward thrust, as on a ramp, causing the left front corner of the vehicle to rise * * *. At higher speeds, or where the angle of incidence between the tire and barrier is high, the upward thrust has been sufficient to cause the vehicle to jump over.

The Department of Transportation argued on the motion before the trial court that the Department was entitled to a judgment of dismissal because it was immune under N. J. S. A. 59:4–6 (plan or design immunity) and N. J. S. A. 59:2–3 (discretionary activity immunity), that the Department's negligence was not a proximate cause of the accident, and that plaintiff had failed to show a dangerous condition

existed. The trial court bottomed its decision on the plan or design immunity of *N. J. S. A.* 59:4–6. The Appellate Division's affirmance was grounded primarily on that section, although some reliance was also placed on *N. J. S. A.* 59:2–3.

The New Jersey Tort Claims Act, *N. J. S. A.* 59:1–1 *et seq.*, provides the framework within which there may be recovery from public entities and public employees. See *Malloy v. State,* 76 *N. J.* 515 (1978). The statute was drafted by a task force selected by the Attorney General. It issued a comprehensive report in 1972 with substantial explanatory comment. *Report of the Attorney General's Task Force on Sovereign Immunity* (1972) (*Report*). In reviewing the statute, reference will frequently be made to the *Report* which is a substantial guide to the Legislature's intent.

*N. J. S. A.* 59:2–1 sets forth the general proposition that *except as otherwise provided in the act,* a public entity is not liable for an injury, whether the injury arises out of an act or omission of the public entity or a public employee. The act then provides that a public entity is liable for injury proximately caused by an act or omission of a public employee in the same manner and to the same extent as a private individual. The *Report's* comment to this section states that "[w]hile the general approach of this act is immunity unless liability, this section provides a flexible liability provision which will permit the courts to adapt the principles established in this act to the particular circumstances of the cases coming before them." *Report* at 211. The following eight sections of the act commencing with *N. J. S. A.* 59:2–3 specify circumstances under which a public entity is not responsible, such as those in which the injury results from discretionary activities, *N. J. S. A.* 59:2–3, failure to enforce a law, *N. J. S. A.* 59:2–4, and failure to make an inspection, *N. J. S. A.* 59:2–6.

*N. J. S. A.* 59:3–1 through *N. J. S. A.* 59:3–14, inclusive, are directed to liability and immunity of public employees. *N. J. S. A.* 59:3–1 states that unless otherwise provided in

the act, a public employee is liable for injury caused by his act or omission to the same extent as a private person. The following sections then express those situations in which a public employee is entitled to immunity. These circumstances appear in large measure to be the counterpart of the specific immunity provisions applicable to public entities. Thus, the employee is granted immunity for discretionary activities, N. J. S. A. 59:3-2, for failure to enforce a law, N. J. S. A. 59:3-5, and for failure to make an inspection, N. J. S. A. 59:3-7.

N. J. S. A. 59:4-1 to 4-9 are devoted to liabilities of public entities for injuries caused by dangerous conditions of property due to negligent acts or omissions of a public employee. See *Polyard v. Terry,* 79 N. J. 547 (1979). Even in that situation public entities are entitled to immunity under certain postures, such as a failure to provide ordinary traffic signals, N. J. S. A. 59:4-5, or the dangerous condition of a highway that is attributable to weather, N. J. S. A. 59:4-7. Included in this chapter is the plan or design immunity, N. J. S. A. 59:4-6.

As noted above, both the trial court and Appellate Division held the plan or design provision immunized the Department of Transportation. That provision reads as follows:

a. Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. [*N. J. S. A.* 59:4-6]

To be entitled to immunity under this section the public entity must demonstrate that the injury was caused by an approved plan or design of the "original construction or any improvement thereto." See *Ellison v. Housing Authority of the City of South Amboy,* 162 N. J. Super. 347, 351 (App.

Div. 1978). The motive inducing creation of this immunity, as stated in the *Report,* is

the fact that approval of plans or designs is peculiarly a function of the executive or legislative branch of government and is an example of the type of highly discretionary governmental activity which the courts have recognized should not be subject to the threat of tort liability. [*Report* at 222]

Furthermore, this immunity was designed to protect the government from responsibility for failing to upgrade its property to meet new standards. Thus, the exposure to liability because the design of older highways would not be safe under modern conditions was eliminated. *Report* at 107–108.

The Attorney General's Task Force commented that the plan or design "immunity is similar to the immunity provided by judicial decision in the State of New York, see *Weiss v. Fote,* 7 *N. Y.* 2d 579, 200 *N. Y. S.* 2d 409, 167 *N. E.* 2d 63 (1960) * * *." *Report* at 222–223. In *Weiss,* the plaintiff charged the City of Buffalo was responsible for an intersection automobile accident because there was an insufficient clearance interval between the time the green signal for east-west traffic ended and the signal for north-south traffic turned green. The City had designed the operation of the lights in this manner. The New York Court of Appeals in a 4–3 decision held the City immune because the cause of action was predicated on its planned or designed method of operation.[1] But significantly the court also suggested that the municipality would have been responsible if the accident had been caused by improper maintenance or operation of the traffic signal, 7 *N. Y.* 2d at 587, 167 *N. E.* 2d at 67, 200 *N. Y. S.* 2d at 414.

---

[1]The New York court also held that the original design was reasonable when made. 7 *N. Y.* 2d at 589, 167 *N. E.* 2d at 68, 200 *N. Y. S.* 2d at 416. *N. J. S. A.* 59 :4–6 imposes no such requirement.

The reasonable deduction to be drawn is that when the accident is ascribable to the plan or design of the original construction, immunity applies, but that the immunity does not follow when a dangerous condition arises out of subsequent maintenance of that property. Applying that principle to this case, one could reasonably conclude at this juncture of the proceeding that the original design called for a 19″ high barrier with a protective facing of three to four inches at the bottom; that in maintaining the road, the Department of Transportation altered the original design by reducing the divider to 15″ and eliminating the protective facing. Thus, the maintenance created a more dangerous condition than previously had existed. See generally Comment, "The New Jersey Tort Claims Act: A Step Forward?" 5 *Seton Hall L. Rev.* 284, 310–316 (1974).

The State argues, however, that the original design contemplated the resurfacings and elimination of the facings, and that therefore the design immunity applies. There is a sharp dispute as to whether the 3″ facing was created for the purpose of providing a necessary leeway for future resurfacings. The State relies principally on the affidavit of James Schuyler, who was present as Chief of the Soil Bureau in the Department's Division of Planning and Research, at the conferences held in 1955 in the Department of Transportation when the barrier was designed. He claimed that in those discussions the suggestion for the facing was proposed for that reason. No reports, writings or other memoranda of those conferences confirming that suggestion were produced. Since the only direct evidence of the Department's intent when the plan was made in 1955 was Mr. Schuyler's assertions that the facing was for the purpose of resurfacing, the State argues that the undenied intent must govern on the motion for summary judgment.

The circumstances, though, do not lend themselves "so clearly as to leave no room for controversy," *Ruvolo v. American Cas. Co.,* 39 *N. J.* 490, 501 (1963), that the purpose of the original design was so limited. Neither the

original plans nor drawings of the barrier reflect any intent that the facings were installed to be used for future resurfacing additions.

The report of the State's expert, Ira Kuperstein, made after examining all the Department's materials, stated that one purpose of the vertical face or curb was to eliminate the possibility of the curb causing the vehicle to vault, jump or "fly over" the barrier. Similarly, the report of John A. Lacz, plaintiff's engineer, indicated that the facing prevented a wheel from rolling directly onto the lower part of the curved surface which would cause the left front corner of the vehicle to rise. Elimination of the vertical facing at the bottom of the barrier increased the risk of a vehicle climbing the barrier. He did not ascribe the existence of the facing to serve as a buffer for additional resurfacings. It is quite obvious that elimination of the facing was contraindicated if its purpose was to prevent cars from vaulting over the divider.

The burden being upon the State, it would be inappropriate on a motion for summary judgment to accept Mr. Schuyler's statement as a matter of law for assuredly the plaintiff is entitled under the circumstances to question his accuracy and credibility at trial. *Ellison v. Housing Authority of the City of South Amboy, supra,* 162 *N. J. Super.* at 352; see *Ruvolo v. American Cas. Co., supra* at 501; cf. *United Rental Equipment Co., Inc. v. Aetna Life & Cas. Ins. Co.,* 74 *N. J.* 92, 100 (1977). "A motion for summary judgment is not a substitute for a plenary trial. Where the motion turns on whether there is a genuine issue of fact, it must be denied unless the absence of such issue clearly appears." *Battle v. General Cellulose Co.,* 23 *N. J.* 538, 549 (1957).

The State next proceeds to argue that it is entitled to an immunity because the resurfacing was accomplished pursuant to an approved plan. The statute applies only to plans or designs of original construction or any improvement thereto. The improvement referred to by the word "thereto" is to the original construction. The plan or design must be one which designates an improvement over the original construction, as

distinguished from maintenance and repair which seek to restore the property to its original condition. It is important to recognize the difference between improvements and maintenance or repairs. This interpretation accords with the intent expressed in the comparable provision in the California statute after which *N. J. S. A.* 59:4–6 is patterned. The California act reads, "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property * * *." *Cal. Gov't Code* § 830.6.

Improvements consist of additions, such as a wider road or more lanes of traffic or another floor on an office building, whereas, as here, resurfacing of the existing roadway is more properly classifiable as maintenance or repair. It is interesting that the Department of Transportation characterized this work as maintenance. In his deposition, Mr. Olszanowski, Assistant Engineer in the Department of Transportation, referred to the project as a maintenance operation to be performed by a maintenance crew. Road resurfacings or patchings to rectify deteriorated or worn conditions are not, as a matter of law, improvements to the original construction of the highway, and accordingly plans for those resurfacings do not necessarily come within the ambit of the statutory immunity.

The Appellate Division also found that the Department of Transportation was entitled to an immunity because of *N. J. S. A.* 59:2–3. This section reads as follows:

a. A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity;

b. A public entity is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature;

c. A public entity is not liable for the exercise of discretion in determining whether to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;

d. A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how

to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable. Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions.

The Appellate Division held that when, where and how to resurface were high-level discretionary decisions falling within the protective discretionary areas. The statement is too broad. Subparagraphs b, c, and d are signposts to the nature of immunized discretionary determinations. Some decisions are clearly within the scope of the immunity. Thus, whether to utilize the Department's resources and expend funds for the maintenance of the road; whether to repair the road by patching or resurfacing; or what roads should be repaired are the type of discretionary determinations entitled to exemptions.

An example of the type of decision to which discretionary immunity was applied is found in *Fitzgerald v. Palmer*, 47 *N. J.* 106 (1966). There we rejected a claim that the Highway Department in constructing an overpass should have put up a fence to prevent a person from throwing objects on cars passing below. We wrote:

[W]hether a road should have four or six or eight lanes, or there should be dividers, or circles or jughandles for turns, or traffic lights, or traffic policemen, or a speed limit of 50 or 60 miles per hour — such matters involve discretion and revenue and are committed to the judgment of the legislative and executive branches. [*Id.* at 109–110]

That case is to be distinguished from *Willis v. Dept. of Conservation & Economic Development*, 55 *N. J.* 534 (1970), where a three-year-old child sustained a traumatic amputation of her arm when she fed sugar to a caged bear. The State's negligence was claimed to be its having left the cage unattended and permitting holes to remain in the screening. The Supreme Court, in upholding the cause of action, wrote:

> Unlike the situation in *Fitzgerald v. Palmer*, the claim now before us does invite consideration of the basic question of judicial abstention in tort matters, for here, according to the complaint, the State itself generated the risk of injury by caging a ferocious animal without suitable safeguards despite the manifest danger to persons the exhibit was intended to attract.
>
> It is plainly unjust to refuse relief to persons injured by the wrongful conduct of the State. No one seems to defend that refusal as fair. [55 *N. J.* at 537–538]

These decisions illustrate the principle that not all decision-making, but only a high-level policy determination is entitled to immunity.

When or whether a road should be repaired or what road should be repaired calls for the exercise of a policy discretion entitled to immunity. Once it was determined that the repair should be accomplished, then public policy demands that government, in carrying out its program, be held to the same standard of care as private citizens. Almost every act includes the exercise of some degree of discretion, but, as indicated above, only a high-level policy determination should properly be held to fall within the general immunity provision of *N. J. S. A.* 59:2–3(a). Note, "The New Jersey Tort Claims Act, Section 59:4–6 — Public Property Plan or Design Immunity," 26 *Rutgers L. Rev.* 838, 842–843 (1973). A decision which is basically one of operational execution is not entitled to the immunity protection.

The plaintiff contends that if he makes out a cause of action against a public entity under a liability section of the act, then the public entity may not claim any immunity. The Appellate Division correctly rejected this argument. 160 *N. J. Super.* at 8–10. The act establishes sovereign immunity for governmental bodies except where otherwise provided. Furthermore, *N. J. S. A.* 59:2–1 states:

> Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person.

It is apparent that the immunity sections prevail over the liability provisions. *Malloy v. State, supra,* 76 *N. J.* at 519.

I cannot say on the record before us that as a matter of law the plaintiff may not be able to establish a cause of action because of the dangerous condition created by the Department of Transportation or that there was no causal relationship between that condition and the accident and deaths that followed.

I would reverse and remand for a plenary trial.

Chief Justice HUGHES and Justice PASHMAN join in this opinion.

*For affirmance*—Justices MOUNTAIN, CLIFFORD and HANDLER—3.

*For reversal*—Chief Justice HUGHES and Justices PASHMAN and SCHREIBER—3.