383 So.2d 477 (1980)
Ruth Burke, wife of/and Frank J. McCLOUD
v.
PARISH OF JEFFERSON.
No. 10475.
Court of Appeal of Louisiana, Fourth Circuit.
April 17, 1980.
Gerard M. Dillon, Dillon & Cambre, New Orleans, for defendants-appellees.
Bruce Danner, New Orleans, for plaintiff-appellant.
Before SAMUEL, LEMMON, GULOTTA, SCHOTT, CHEHARDY, JJ.
*478 SCHOTT, Judge.
Plaintiffs have appealed from a dismissal of their suit on an exception of no cause of action filed by defendant. Plaintiffs sued for damages to themselves and their property for the lack of an effective drainage system, and the sole issue is the sufficiency of their pleadings to state a cause of action.
Plaintiffs allege in their petition as follows: They are the owners of their home on real property on the corner of Mississippi Avenue and 27th Street in Jefferson Parish which in the recent past has eroded and sunk as the result of the absence of any effective drainage system in the area. Even with the slightest rainfall water accumulates and remains on the property and the streets. The underground base of Mississippi Avenue has eroded causing a "slanting" toward their property and an aggravation of the condition. Defendant's negligence consists of their failure to provide adequate drainage after undertaking to do so, "to correct a defective drainage system after having notice of same," and to properly inspect for and warn of defects in the system. They allege further:
"X
Petitioners specifically aver that defendant had specific knowledge of the defects complained of and failed to rectify same after a reasonable period of time.
Alternatively, the hereinabove described defects are of such a nature that defendant should have had knowledge of same and thereby act accordingly."
In a supplemental and amending petition they allege:
"X(A)
Further, the Parish of Jefferson has approved the adding of new subdivisions since the installation of drainage facilities in the proximity of petitioners' home, having full knowledge, through its agents and employees, that such additions would overtax the drainage system and thereby cause the hereinabove described damage."
In considering an exception of no cause of action every reasonable interpretation must be accorded the language of the petition in favor of maintaining the sufficiency of the petition and affording the litigant an opportunity to present his evidence. Pleadings must be reasonably construed so as to afford litigants their day in court, to arrive at the truth and to avoid a miscarriage of justice. Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975). The exception must be overruled unless the allegations affirmatively establish that under no facts admissible under the allegations of the petition does plaintiff have a cause of action. Guillory v. Nicklos Oil & Gas Company, 315 So.2d 878 (La.App. 3rd Cir. 1975).
Applying these principles to the pleadings in question, particularly the supplementary and amending petition, we have concluded that the exception was improperly maintained. We arrive at this conclusion under Eschete v. City of New Orleans, 258 La. 134, 245 So.2d 383 (1971).
The Eschete case held that plaintiff stated a cause of action in his allegations that the city had deliberately and therefore maliciously authorized new subdivisions, causing flooding during any ordinary heavy rainfall. While plaintiffs' petition does not contain allegations of deliberate and malicious conduct on the part of defendant, the following language of the Eschete case indicates that these particular words need not be used in order to state a cause of action:
"... The plaintiffs are seeking to hold the City, not for failing to provide adequate drainage, but for fault in adding new subdivisions, thus increasing the volume of water in the drainage area. In effect, according to the petition, the power to grant or withhold consent for new subdivisions in the Pines Village drainage area effectively controlled the volume of water being discharged in that area."
Plaintiffs' allegation in paragraph X(A) quoted above seems sufficient to prevent maintenance of the exception of no cause of action.
*479 Furthermore, plaintiffs' original petition states a cause of action when it is construed liberally in their favor. The allegations can be read to mean that there was a specific defect in the particular parts of the system serving the corner where their property was located, the parish government had actual or constructive knowledge of the defect, and it failed to correct it. This seems to bring the case within the ambit of Falgout v. St. Charles Sewerage Dist. No. 3, 351 So.2d 206 (La.App. 4th Cir. 1977) (where the District was held liable for damages resulting from a defective sewerage system and where the District had prior knowledge of the defect); Burns v. Dominigue, 354 So.3d 763 (La.App. 4th Cir. 1978) (where the State Department of Transportation was held liable for an accident caused in part by a stop sign's being obscured and the Department had constructive notice of this condition).
Plaintiffs' original petition was not leveled against the overall inadequacy of the drainage system but rather a particular defect near their property which the Parish failed to remedy despite notice on its part.
While it may be highly questionable that plaintiffs can ever prevail on the merits of this case, and while it may be possible for defendants to secure a pre-trial dismissal of plaintiffs' case by the use of some other procedural device, such as motion for summary judgment, we are dealing only with the exception of no cause of action and have concluded that it was improperly maintained.
Accordingly, the judgment appealed from is reversed and set aside, and there is judgment in favor of plaintiffs and against defendant, overruling its exception of no cause of action. The case is remanded to the district court for further proceedings. The costs of this appeal are taxed against defendant.
REVERSED AND REMANDED.
LEMMON and GULOTTA, JJ., concur and assign reasons.
CHEHARDY, J., dissents and assigns reasons.
LEMMON, Judge, concurring and assigning reasons.
Analysis of this case requires a distinction between a function which local government properly may perform for the protection of the general public and a duty which local government must perform, according to standards of reasonableness, in order to prevent risk of damage to particular persons or property.
Providing drainage and protecting private property from flooding are proper functions of city and parish governments. Whether or not to provide a drainage system or to perform general improvements to an existing drainage system are decisions based on governmental judgment and discretion, tempered by such considerations as the availability of funds and the competing demands of other governmental functions in terms of priority. The failure to provide a general drainage system or to improve generally an existing inadequate system does not give rise to tort liability based on breach of duty.
Once a governmental body, however, undertakes to provide drainage or to make general improvements in an existing system, it has a duty to perform this function according to reasonable standards and in a manner which does not cause damage to particular citizens. This duty is based on C.C. art. 2315 and on traditional tort notions of fault, causation and damage to another.
Moreover, a governmental body has a duty to remedy known hazardous conditions in a drainage system it has installed when such hazardous conditions may reasonably be expected to cause damage.
In the present case plaintiffs alleged they sustained damage because the Parish failed to provide a proper system, after undertaking to do so, and failed to correct a particular defect, after notice. Plaintiffs are entitled to a day in court to attempt to prove these allegations.
GULOTTA, Judge, concurring.
I concur.
*480 The following language in the Eschete v. City of New Orleans case, 258 La. 134, 245 So.2d 383 (1971):
"The contested petition alleges that the City of New Orleans, through its agents and employees, had known of the "dangerous drainage situation" in the Pines Village area for many years. Knowing in advance that the authorization of new subdivisions in the area would cause flooding, the City of New Orleans has "deliberately, and therefore maliciously" authorized new subdivisions causing flooding during "any ordinary heavy rain fall," thereby increasing plaintiffs' peril. The petition describes the damages resulting from the flooding.
In essence, the plaintiffs allege that the adding of the new subdivisions that overtaxed the drainage system was the wilful act of the City."
is persuasive that paragraph X(A) of the supplemental and amended petition quoted in the majority opinion states a cause of action.
CHEHARDY, Judge, dissenting.
I respectfully dissent.
Plaintiffs' original petition does not aver the Parish of Jefferson violated a duty to any individual, but rather alleges the breach of a duty owed to the general public to provide an adequate drainage system. In plaintiffs' supplemental petition it seems that this fact becomes obvious to plaintiffs who then attempt to cure this defect by tracking the language to some extent found in Eschete v. City of New Orleans, 258 La. 134, 245 So.2d 383 (1971), wherein the Supreme Court held that the plaintiff had stated a cause of action. The pleadings in that case alleged the City of New Orleans through its agents and employees had known for many years of the dangerous drainage situation in an area where plaintiff's home was built and that the City had deliberately, and therefore maliciously, authorized new subdivisions that would overtax the present system servicing his area.
In this case plaintiffs' supplemental petition stops short of imputing knowledge of the dangerous drainage situation of alleging the Parish deliberately and maliciously authorized the new subdivision.
Under Eschete to state a cause of action there must be an allegation of a deliberate willful malicious tort as distinguished from negligent acts of commission or omission.
The issue then is whether the pleadings allege a grievance for which the law affords a remedy. Bamber Contractors, Inc. v. Henderson Bros., Inc., 345 So.2d 1212 (La. App. 1st Cir. 1977). Plaintiffs cannot recover damages from their parochial government simply because they sustained damages. In Dufrene v. Guarino, 343 So.2d 1097 (1977), this court emphasized that government liability for damages is present only when the agency has breached a duty owed directly to the individual. Dufrene illustrates a situation in which the failure of an agency to act did not impose liability on the City. The court answered the question posed in the quoted excerpt negatively:
"* * * The issue presented is whether government officials or agencies charged with the duty of building inspections are liable for damages incurred in a fire in the premises where allegedly either no inspections were made or improper inspections were made and fire hazards were permitted to exist."
In this case the four allegations of negligence in the original petition, even if proven, would not support a judgment for plaintiffs because the Parish owes no individual duty to plaintiffs. As to the allegation quoted above from the supplemental petition, counsel for defendants correctly distinguished as follows:
"The petition in Eschete alleged `that the City of New Orleans, through its agents and employees, had known of the "dangerous drainage situation" in the Pines Village area for many years. Knowing in advance that the authorization of new subdivisions in the area would cause flooding, the City of New Orleans has "deliberately and therefore maliciously" authorized new subdivisions causing flooding during "any ordinary heavy rain fall," thereby increasing plaintiffs' *481 peril.' Effectually, the plaintiffs in Eschete alleged a willful tort on the part of the City of New Orleans. A full reading of the allegations in plaintiffs' petition in the case at bar reveals that plaintiffs' claim against the Parish herein is based upon allegations of negligence." (Emphasis added.)
The distinguishing factor between Eschete and this case is the allegation of willful authorization of new subdivision development. In Eschete, the Supreme Court restricted governmental liability in drainage cases to situations where the allegation of negligence in authorizing new subdivisions was coupled with malice. It is interesting to note that the tort of libel likewise has malice as one element of actionable negligence. See Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir. 1979).
While we are cognizant of the jurisprudence that doubts as to whether a cause of action has been stated must be resolved in favor of plaintiff, who should be given his day in court, we also recognize the absolute need not to open avenues of litigation in that area viewed by a majority of the jurisdictions in the country as political and/or sociological for which no legal redress is or should be afforded.
Further we note that parochial officers charged with approving plans filed for subdividing lands within their jurisdiction function under guidelines established by the State in L.R.S. 33:101 et seq. The Parish Planning Commission, charged with administering this law in its area, is required to adopt regulations for the subdivision of land, and once the agency has issued a master plan setting forth regulations, it has no alternative other than to approve plans of subdivision that conform to the master plan. Implementation of L.R.S. 33:101 has occurred in Jefferson Parish.
While C.C.P. art. 1391 and L.R.S. 13:3712(B) limit judicial notice of local ordinances to those filed with the clerk of this court or those introduced in evidence in the trial court by certified copy, we need not refer to the local ordinances to know the state authorization to form a planning commission has been put in effect in Jefferson Parish. State statutes establish this has been done. For example, L.R.S. 33:3690.1 et seq. grants the Jefferson Council authority to blacktop streets. Additionally La. Const. 1921 art. 14, § 43 pertains to the drainage district and its funding. Had the elected officials of Jefferson not developed a master plan the state statutes passed to implement this plan would not have been enacted.
As we held in Bode v. Parish of Jefferson, 309 So.2d 730 (1975), the Parish may only refuse to issue permits when the applicant has not complied with the law or when the permit sought is contrary to a valid parish ordinance. In Bode we pointed out the Parish could not deny a building permit because of an alleged threat to public safety when the Parish had other methods of resolving the safety problem it anticipated. Applying that rationale to this case, we conclude the Parish would have been subject to a mandamus by the subdivider to issue approval of its plans once the subdivider complied with the requirements established by the master planning commission had it disapproved the application. If as appellant alleges the Parish had withheld approval through the appropriate agency, it would in effect deny the subdivider equal protection of law guaranteed by U.S.Const. Amend. 14 and La.Const. (1974) art. 1, §§ 2, 3 and 4. The court discussed the constitutional ramifications in Bode as follows:
"* * * [T]he Parish could not unconditionally deny use of property because of the possibility of safety problems which could be satisfactorily handled by adoption of special regulations or by other measures short of prohibition of use of the property for the purpose for which it was intended.

"Finally, denial of the permit because of the absence of off site improvements constituted unequal treatment. The Parish admitted that building permits for unimproved sites were routinely issued when there was adequate assurance that off site improvements will be installed at the owner's cost. * * *" (Emphasis added.) *482 As the court pointed out in Schwing v. City of Baton Rouge, 249 So.2d 304 (La.App. 1st Cir. 1971), the parochial authority, charged with the responsibility of adopting master plans for development of its territory, must administer its program, once adopted, in a constitutional manner and afford all citizens equal protection and due process of law. We quote:
"This court has determined that City-Parish is imbued and endowed with the authority to adopt Master Street Plans, including designation of land for present and future streets, and extensions of presently existing roadways such as South Choctaw Drive at some future time, but where the City-Parish refuses to approve a re-subdivision unless the subdivider includes within the map or plan a dedication of an area sufficient to accommodate the extension of a street to the primary benefit of the public at large, it falls afoul of the constitutional prohibition against the taking of private property for public use and purposes without fair value being paid." (Emphasis added.)
Moreover, if Eschete should be interpreted to stand for the principle, as plaintiffs contend, that under any circumstances liability is imposed upon a municipality which authorizes new subdivisions which result in an existing drainage facility becoming inadequate during heavy rainfalls, this would be opposed to the nationwide majority rule as expressed in Barney's Furniture Warehouse v. City of Newark, 62 N.J. 456, 303 A.2d 76 (1973), thusly:
"* * * More frequently it is held that if a sewer is adequate when constructed the municipality is not liable because of subsequent inadequacy occasioned by the growth of the municipality and the increased demands made upon the sewer. * * *"
In most jurisdictions throughout the United States, municipal governments are not held liable in tort for sewerage and drainage which, while initially adequate, become inefficient due to rapid population growth. The Barney court reasoned:
"We answer the question posed in the negative. First, there is no support in our law for the minority position alluded to above of a positive duty of the municipality to keep its sewer plant abreast of developing needs. Second, we conclude that too much of the official decision-making process in dealing with such a problem at the various phases of its development was grounded in governmental judgment and discretion to permit the sanction of an imposition of damages for the result of its exercise. This conclusion is fortified by the pertinent cases, old and new, both here and elsewhere. As already noted, the conception of the original plan for draining and sewering the area was an exercise of official judgment. Harrington v. Woodbridge, supra, [70 N.J.L. 28, 56 A. 141]. Whenever, thereafter, serious flooding first appeared, governmental judgment and discretion had to be exercised as to whether or when to remedy it, or how, in terms of priorities of need as between that exigency and others the city faced. Amelchenko v. Freehold Borough, 42 N.J. 541, 549-550, 201 A.2d 726 (1964); Fitzgerald v. Palmer, supra [47 N.J. 106, 219 A.2d 512]. By the time plaintiffs began these actions in 1970 the difficulties in resolving the critical governmental problem presented had become badly compounded by the substantial and rising cost of the indicated remedy, the competing needs of the city in other directions and its intervening fiscal deterioration. The problem for the responsible city officials never ceased to be one of exercise of discretionary judgment, even though the option for continuing inaction on a solution became increasingly less tenable.
"The doctrinal problem posed is not one of governmental immunity to suit but rather of the absence of a substantive basis for imposing liability in such circumstances. * * *"
Likewise, the municipality cannot be held liable for damage caused by an increase in flow of surface waters. In Baldwin v. City of Overland Park, 205 Kan. 1, 468 P.2d 168 *483 (1970), the Kansas Supreme Court noted rapid population growth has created problems in municipalities designed to accommodate a much smaller population. The solution, it pointed out, cannot be to hold the City liable for damages to the property owners so affected by change. Baldwin points out the solution is political.
The reasoning in the cases from other jurisdictions rests on the reality that citizens of a political subdivision control the financial wherewithal to expand drainage and sewerage facilities when population growth so dictates in voting bond issues to support the needed expansion.
Accordingly, absent malice or deliberate tort, there is no liability on the parochial government to furnish the services plaintiffs here claim are due to them individually.
The Baldwin decision considers a municipality's liability for flooding in this language:
"What then is a city's responsibility with respect to surface waters? In 63 C.J.S. Municipal Corporations § 883, [p. 275,] the following appears:

`Surface Water, a. In General
`In the control and disposition of surface waters, municipal corporations ordinarily have the same rights and are subject to the same liabilities as private persons. In the absence of statute or charter providing otherwise, they are under no obligation to prevent the natural flow of surface waters or to protect private property from damage therefrom, and they are not liable for any damage caused thereby. [p. 275.]
* * * * * *
`b. Obstructing, Diverting, or Increasing Flow.
`As a general rule a municipal corporation is not liable for damage caused by the increased or accelerated flow of surface waters which have not been diverted from their natural course, or by the incidental change or interruption in, the discharge of, or the increased or accelerated flow of, surface waters caused by the lawful improvement of its streets or the making of other public improvements.' (p. 277.)
"In 18 McQuillin, Municipal Corporations, 3d ed. rev., § 53.141, we find this:
`A fortiori, a municipality is not liable to a property owner for the increased flow of surface water over or onto his property, arising wholly from the changes in the character of the surface produced by the opening of streets, building of houses, and the like, in the ordinary and regular course of the expansion of the municipality.' (pp. 531-532.)
"In the case at bar there is no indication the city disturbed in any way the natural drainage of the twenty block area in which plaintiffs' property is located. * * *
"* * * Where rapid growth has occurred the resultant problem is primarily an economic one for cities and citizenry and, under the present state of our law, its solution properly lies in concerted political action rather than in the courts." (Emphasis added.)
Courts uniformly recognize that the demise of sovereign immunity does not render governmental agencies liable for any damage incurred by its citizenry. Courts must measure the liability of an agency in the same light as would be applied to individuals or private corporations. The breach of a duty to the individual must be the premise on which governmental liability is predicated. The foregoing principal was discussed in Steitz v. City of Beacon, 295 N.Y. 51, 64 N.E.2d 704 (1945). In that case plaintiffs claimed that their property was destroyed by fire because the City negligently failed to keep in repair the pressure and flow regulating valve in its water line as a result whereof insufficient water was provided to combat effectively the fire in question. Upon affirming a dismissal of the suit for failure to state facts sufficient to constitute a cause of action, the court said:
"* * * `If the plaintiff is to prevail, one who negligently omits to supply sufficient pressure to extinguish a fire started *484 by another assumes an obligation to pay the ensuing damage, though the whole city is laid low. A promissor will not be deemed to have had in mind the assumption of a risk so overwhelming for any trivial reward.' A fortiori the Legislature should not be deemed to have imposed such a risk when its language connotes nothing more than the creation of departments of municipal government, the grant of essential powers of government and directions as to their exercise.
"Such enactments do not import intention to protect the interests of any individual except as they secure to all members of the community the enjoyment of rights and privileges to which they are entitled only as members of the public. Neglect in the performance of such requirements creates no civil liability to individuals. Restatement of Torts, § 288; Moch Co. v. Rensselaer Water Co., supra [247 N.Y. 160, 159 N.E. 896]; Taylor v. Lake Shore & Mich. S. R. Co., 45 Mich. 74, 7 N.W. 728, 40 Am.Rep. 457; Frontier Steam Laundry Co. v. Connolly, 72 Neb. 767, 101 N.W. 995, 68 L.R.A. 425; cf. City of Rochester v. Campbell et al., 123 N.Y. 405, 25 N.E. 937, 10 L.R.A. 393, 20 Am.St. Rep. 760, and Troeger v. Prudential Insurance Co. of America, 154 Misc. 537, 277 N.Y.S. 423, which cites Restatement of Torts, § 288. The rule is well stated in Hayes v. Michigan Central R. R. Co., 111 U.S. 228, 240, 4 S.Ct. 369, [374,] 28 L.Ed. 410."
In summary, we conclude plaintiffs have failed to allege the breach of a duty owed to them by the Parish of Jefferson for which the law provides a remedy.
For the above reasons I would affirm the judgment appealed from.