PONDER, Judge.
Plaintiffs, homeowners and a civil association, filed suit in redhibition, negligence and unjust enrichment against defendants, contractors and the parish police jury, because of defective streets and inadequate drainage of their subdivision. They appealed from the judgment of dismissal on peremptory exceptions of prescription, no right of action and no cause of action.
The issues are prescription, actio de in rem verso, and failure to allow amendment after sustaining a peremptory exception of no cause of action.
We affirm in part, reverse in part and remand.
Circle R, Inc., developed North Forest Subdivision during the early 1970’s. It sold all the lots, developed in three phases, to Homecraft Corporation, the predecessor of U. S. Home Corporation. The latter built homes on the lots and from 1974 to 1977 sold them to purchasers, among them the three individual plaintiffs herein. Final approval of the subdivision was given by resolution of the police jury on May 16,1974 for the first phase, July 18, 1974 for the second phase and December 17, 1974 for the third phase.
Appellants contend that liberative prescription did not commence running until June, 1979, for multiple reasons: that defects were not discovered until then, that attempts to repair were not abandoned until then, that buyers were ignorant of facts entitling them to bring suit, that the tort was a continuing one, and that defendants had lulled appellants into a false sense of security.
With exceptions to be hereafter noted, the trial court has correctly treated the exceptions in written reasons which we adopt as our own.
“Circle R, Inc., filed the following exceptions:
* * * * * *
b. peremptory exceptions:
(1) to the use of the class action vehicle;
(2) prescription;
(3) no right of action; and
(4) no cause of action.
U. S. Home Corporation, successor to Homecraft Corporation, filed peremptory exceptions of prescription and no right of action.
The St. Tammany Police Jury joined with Circle R, Inc., and pleaded * * * a peremptory exception to the use of a class action.
First, after reviewing the pleadings, and the evidence, both parol and documentary, the Court finds that Circle R, Inc., *452 dedicated to the public all streets in the North Forest Subdivision. This dedication was clearly and properly accepted by the St. Tammany Parish Police Jury, as indicated on the plats covering the three phases of the subdivision, and by excerpts from minutes of the meetings of Police Jury.
Therefore, the streets belong to the public — not Circle R, Inc., — and they are subject to the exclusive authority of the St. Tammany Parish Commission Council, successor to the Police Jury, insofar as maintenance and repairs are concerned.
In Article XVI of the petition plaintiffs allege:
In the alternative and in the event the Police Jury does not have exclusive authority to repair roads, and in the event this Court finds Circle R the owner of said roads, Circle R has created a nuisance in fact and in law as a result of which the plaintiffs’ property has depreciated in value and plaintiffs are entitled to an order of this Court ordering the Parish to repair said streets at the expense of Circle R. (Emphasis added)
Therefore, due to the findings of the Court that there has been a valid dedication of the streets by Circle R, Inc., to the public, and considering the alternative method by which it is claimed a nuisance has been created by Circle R, Inc., the plaintiffs have no right or standing to pursue the nuisance claim against Circle R, Inc. This claim will be dismissed with prejudice without the necessity of addressing the matter of prescription.
Donnie Ray Benson, and his wife, Virginia Benson, acquired their home in the subdivision by deed dated April 23,1975. At the time the Bensons occupied their home, or very shortly thereafter, street deterioration was noticed. Support rods were working through the concrete; the concrete streets were cracking and buckling. Holes were developing in the streets. Curbs buckled. The drainage was inadequate to remove water accumulating from heavy rains, with the result that the entrance sometimes flooded to such an extent as to deny homeowners access to and from the subdivision by automobile.
U. S. Homes was in the midst of construction in the summer of 1975, and its construction supervisor, Phil Switzer, was on the site. Mrs. Benson spoke to Mr. Switzer about the street and drainage problems during the summer of 1975, and she was advised by him that Homecraft, now U. S. Homes, would do nothing about the problem.
Switzer and Homecraft expressed their readiness to repair any damages caused by the ongoing construction, and did repair some street signs and clean out a drain. In fact, he felt that Homecraft did repair all damages caused by construction. He felt that the complaints dealt with ‘problems’ unrelated to new home construction. His opinion and the position of Homecraft to accept no responsibility for the condition of the streets and drainage within the subdivision were unequivocally conveyed to Mrs. Benson and other residents of the subdivision.
The street and drainage problems, together with the expressed position of no responsibility on the part of Homecraft was the driving force that brought about the organization in late 1975 of the North Forest Homeowners’ Association.
Plaintiff, James Anderson, acquired his home in the subdivision by deed dated June 30, 1975, and was elected president (the second president) of the Homeowners’ Association in 1976, and served from September, 1976, through September, 1977. At the time of his purchase, all streets were complete, and he noticed some puddling of water in the streets and some curb deterioration. Although he assumed Homecraft would make repairs when home construction was complete, he was never told so.
From the time he entered the office of president of the Homeowners’ Association he received complaints regarding the streets.
By letter dated March 12, 1977, directed to Phil Switzer of Homecraft, Mr. Anderson advised that he was being constantly ques *453 tioned by subdivision homeowners regarding the condition of streets and drainage within the subdivision. He advised Mr. Switzer that ‘Most homeowners have strongly voiced their growing disgust at the rapid rate with which the streets are deteriorating and the apparent lack of interest by anyone on a responsible level to take positive actions to correct the situation.’ He requested a response from Switzer by March 22, 1977, so that the Association would be “entirely clear’ on Homecraft’s position regarding the streets and drainage.
On March 23, 1977, Switzer responded in writing to the Anderson letter, and reiterated the Homecraft policy to repair any areas damaged during construction. He concluded that ‘This cannot and does not mean, however, that we will assume the responsibility of either developer or governing body to perform maintenance on the public facilities of the subdivision.’
On March 24, 1977, Mr. Anderson was in contact with the Police Jury and first learned that Circle R had constructed the streets.
In early 1977, Mr. Anderson and other members of the Homeowners’ association maintained regular contact with police jurors and anyone else whom they thought might get them relief, including the Governor’s Office of Consumer Protection. They received only rhetoric, but no promises from anyone to effect the repairs.
In 1977, as a result of meetings and pressure from the homeowners and the police jury, Circle R agreed to a payment to the Police Jury of $12,500.00 to repair the streets, provided that Homecraft would match the' funds. Homecraft eventually deposited the matching $12,500.00 under protest, and the Police Jury made some repairs in the summer of 1978. At no time, however, did Circle R or Homecraft admit their responsibility or liability for the condition of the streets. To the contrary, such liability was strongly denied. It would appear that the funds were made available as a public relations gesture.
The homeowners were not satisfied with the repairs made by the Police Jury in the summer of 1978. At this time they clearly knew, or should have known, that their concerted and extensive efforts to obtain street and drainage repairs were all to no avail. No further repair work has been undertaken by the Police Jury. This lawsuit followed on January 14, 1980.
Plaintiff Henry Allen Sorrels III acquired his home from Homecraft on April 29,1977, and Homecraft completed its construction and development of the subdivision with the closing of its last act of sale in November, 1977.

The complaint made by the plaintiffs alleges an omission on the part of Circle R and Homecraft in not warning of the condition of the streets and drainage before closing the acts of sale. Nothing occurred in the relationship between the parties to interrupt the one year liberative prescription, and this claim has clearly prescribed.
* * * * * *
A claim is made against Circle R under the doctrine of actio de in rem verso. The principle behind this claim is based in equity. Our Supreme Court dealt with such a cause of action in Minyard v. Curtis Products, Inc., [251 La. 624] 205 So.2d 422 (La.1967).
The Court set forth five prerequisites to the successful suit by actio de in rem verso:
(1) there must be an enrichment,
(2) there must be an impoverishment
(3) there must be a connection between the enrichment and resulting impoverishment,
(4) there must be an absence of ‘justification’ or ‘Cause’ for the enrichment and impoverishment, and
(5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature.
Obviously, this doctrine has no application to the case at bar. This comes clear on an analysis of the fifth prerequisite, which makes further examination unnecessary. The Supreme Court, [205 So.2d] at page 433 in the Minyard case, pointed out:
*454 ‘The fifth requirement, that there be no other remedy available at law, is simply an aspect of the principle that the action must not be allowed to defeat the purpose of a rule of law directed to the matter at issue. It must not, in the language of some writers, “perpetrate a fraud on the law.” Article 21 of the Louisiana Civil Code prohibits a reference to principles of equity in cases which would allow application of more specific legal action.’
Therefore, the peremptory exception of no cause of action directed toward this cause of action will be sustained.
The plaintiffs also seek, in Article XVIII of their petition, a reduction in the selling prices of their lots and homes. This claim must be viewed in light of the codal articles on redhibition. To this claim, there has been filed a peremptory exception of prescription.
The applicable codal articles are 2534, 2545 and 2546:
‘Art. 2534. The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.
This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.’
‘Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages.’
‘Art. 2546. In this case, the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice.’
This vice is not to be presumed; it must be proved by the seller.
Homecraft or U. S. Homes carried its burden of proof, and adequately established that in early 1977, North Forest residents considered their streets and drainage to be in bad repairs. In fact, it was on March 12, 1977, that Mr. James E. Anderson, president of the Homeowners’ Association, wrote Mr. Switzer advising of the growing disgust of the North Forest residents over their streets and drains. The very tone of the letter approached that similar to what one would expect in a demand letter. No defendant promised to satisfy the homeowners’ complaint. To the contrary, Homecraft was consistent in its denials of responsibility as far back as 1975. There has been nothing done by Homecraft or Circle R that would result in an interruption of prescription. The exceptions of prescription will be sustained.
Consequently, all claims against Circle R, Inc., and U. S. Homes Corporation will be dismissed at plaintiffs’ cost.”
Appellants ascribe error to the failure to recognize Art. 669[1] and to assign 10 years prescription. The article does not lend itself to the facts of this case; we find it inapplicable.
In oral argument appellants have urged the court to apply the oblique action, the right of a suing creditor to exercise, in the insolvent debtor’s name, the latter’s rights and actions.[2] We are not persuaded to employ this action, expressly and intentionally omitted from the Code of 1825 and used only a few times in our jurisprudential history.
The cause of action against the police jury is expressed in terms of failure to maintain streets and failure to use collected taxes for street maintenance. We agree with the trial judge that those allegations fail to state a cause of action because of the discretion given to the governing body and the reluctance of the courts to assume the authority to supervise the exercise of that discretion.
*455 However, a cause of action may be stated against the governing authority. See Eschete v. City of New Orleans, 258 La. 134, 245 So.2d 383 (1971); McCloud v. Parish of Jefferson, 383 So.2d 477 (4th Cir. 1980); Pennebaker v. Parish of Jefferson, 383 So.2d 484 (4th Cir. 1980). We therefore believe that the trial judge erred in not giving plaintiffs an opportunity to amend their pleadings in accord with La.Code of Civil Procedure Art. 934.[3]
For these reasons, we affirm the judgments insofar as it maintained the exceptions and dismissed the suits against Circle R, Inc., and U. S. Home Corporation. We affirm the judgment insofar as it maintained the exceptions of no cause of action against the St. Tammany Parish Police Jury. We reverse, however, the dismissal of the suit, and remand the case for further proceedings in accord with this opinion. The plaintiffs are cast with all costs of both courts.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. La.Civil Code Art. 669:
“If the works or materials for any manufac-tory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.”

. See Comment, The Oblique Action, 54 Tul. L.R. 699 (1980).

. La.C.C.P. Art. 934:
“When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.”