920 So.2d 263 (2005)
James and Beverly MITTER
v.
ST. JOHN THE BAPTIST PARISH and Arnold J. Labat, President, St. John the Baptist Parish.
No. 05-CA-375.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2005.
*264 Robert S. Abdalian, Attorney at Law, and Matthew K. Brown, Attorney at Law, New Orleans, Louisiana, for Plaintiff/Appellee-Second Appellant.
Albert C. Miranda, Gina Puleio Campo, Attorney at Law, Metairie, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS, SUSAN M. CHEHARDY, WALTER J. ROTHSCHILD, and JAMES C. GULOTTA, Pro Tempore.
JAMES C. GULOTTA, Judge Pro Tempore.
Defendants appeal from a $77,500 judgment for inverse condemnation and damages awarded to a resident of St. John the Baptist Parish whose property was damaged when drainage problems in an adjacent subdivision were alleviated by the Parish which resulted in erosion, flooding and stagnated water on plaintiff's property. The trial judge awarded $32,500 in *265 property damage, $30,000 as cost to cure the plaintiffs' remaining property, and $15,000 for mental anguish/loss of enjoyment of the property.
In the original petition, plaintiffs made claims of inverse condemnation, deprivation of enjoyment of property in violation of La.C.C. art. 667, general tort, and, constitutional claims of lack of due process, and violation of equal protection.
The specific complaints of plaintiffs are that the Parish:
1. diverted drainage from the subdivision onto plaintiffs' property;
2. dammed a canal, thereby permitting water to sit in a drainage ditch in front of plaintiffs' home;
3. allowed water to remain in a ditch causing erosion to the rear of plaintiffs' property; and,
4. caused a truckload of dirt to be placed in the ditch in front of plaintiffs' property that blocked off a culvert causing water to accumulate on the property causing stagnation and mosquito breeding.
Plaintiffs further claim that discharged drainage from other lots caused flooding to his property when the Parish allowed an adjacent landowner to place a wooden fence across the rear of the property that enclosed the drainage servitude.
The trial judge made several specific findings of fact including that plaintiffs built their home in accordance with parish specifications as to elevation requirements. The trial judge further found that drainage from two lots to the rear of plaintiffs' property flowed through an 18 inch culvert, causing flooding to the rear of the Mitters' property. The Parish blocked off this culvert at a nearby intersection, causing the discharged waters to sit on the Mitters' property, causing foul smells and providing a breeding ground for mosquitoes.
After making these findings of fact, the trial judge found that immunity does not extend to the defendants' actions, and that the actions of the defendants constitute a per se "taking" of plaintiffs' property. Both parties appealed the judgment.
In their appeal defendants raise multi-faceted arguments. Citing La. R.S. 9:2798.1[1] defendants claim statutory immunity when a governmental body exercises discretionary governmental functions. Defendants further argue that there was no "taking" of the property and consequently plaintiffs are not entitled to any *266 remuneration. From an evidentiary standpoint, defendants claim the trial judge improperly relied on the testimony of plaintiffs as to the value of the property in connection with the diminution of value, when plaintiffs' expert could not testify that there was in fact a diminution in value. Defendants further assert that the plaintiffs sold part of their property for the full price without any loss in value; and that the trial judge disregarded the fault on the part of plaintiffs in causing erosion in the drainage ditch in front of their property.
Finally, defendants claim the trial judge erred in denying their motion for a new trial when the Parish subsequently learned of the proposed structure of a pumping station which would alleviate all of the problems complained of by plaintiffs.
We disagree with all of defendants' contentions.
In well-analyzed and well-written reasons for judgment, the trial judge stated in pertinent part:
"... It is unthinkable that a governmental authority could be protected from liability in a case such as this where improvements to the drainage system relieving the problems of certain citizens (Belle Grove residents), causes problems to other citizens ..."
Citing McCloud v. Parish of Jefferson, 383 So.2d 477, (La.App. 4th Cir.1980), the trial judge quoted language from that case which supports a conclusion that the immunity in discretionary matters exercised by governmental agency is not absolute:
"... Once a governmental body, however undertakes to provide drainage or to make general improvements to an existing system, it has a duty to perform this function according to reasonable standards and in a manner which does not cause damage to particular citizens...."
Further, as pointed out by plaintiffs, La. Const. art. 12, § 10(A) provides in pertinent part:
"Neither the state, a state agency, nor political subdivision shall be immune from suit and liability in contract or for injury to person or property."
The Louisiana Supreme Court has recognized a claim of "inverse condemnation" and provides a procedural remedy (to a property owner seeking compensation for land already taken or damaged) against a governmental or private entity having the powers of eminent domain where no expropriation has commenced. State v. Chambers, 595 So.2d 598 (La.1992); Sellers v. St. Charles Parish, 04-1265 (La.App. 5 Cir. 4/26/05), 900 So.2d 1121, 1126. In Chambers, the Supreme Court set forth a three-prong analysis for courts to use in determining whether a claimant is entitled to eminent domain compensation. The court must first determine if a recognized species of property right has been affected. If it is determined that type of property right is involved, the court must decide whether the property has been taken or damaged in a constitutional sense; and then determine whether the taking or damaging is for a public purpose under Article I, § 4. Chambers, 595 So.2d at 602.
Based on our consideration and the facts and the law applicable, we are led to conclude that there has been a "taking" of plaintiffs' property, and that defendants are not entitled to government immunity in the instant case.
In connection with defendants' second argument, regarding plaintiffs' lack of proof on the diminution of value of the property, we find no merit to defendants' claim that the trial judge erroneously relied on the testimony of plaintiff, James Mitter. The Mitters and their expert, Bennett Oubre, concluded that the Mitter property was placed in a drainage bowl *267 and that it would be more difficult to sell and that this would devalue the property.
Both Mr. and Mrs. Mitter testified at trial. Mr. Mitter testified that he purchased a lot on the corner of Belle Grove and Farm Road in 1983 and built a home on the land in 1985. At that time the Belle Grove subdivision, parallel to Farm Road was developed. The Mitters' lot was surrounded by wooded area both in front and in back of the property. A five-foot drainage servitude is at the rear of the property. There is a ditch in front of the property that drained into the Farm Road canal. When he built his home, Mr. Mitter put in the culverts according to parish specifications.
In the mid-1990's an extension to the subdivision was developed. Homes were built on Belle Grove Drive directly behind the Mitters' property. The newly developed lots were graded higher than the Mitters' property and the drainage servitude was filled. During this time Belle Grove Drive was extended and a law suit was filed against the Parish by surrounding property owners. To settle the law suit, the Parish installed an 18 inch culvert and ran it from the clean outs in the old Belle Grove area behind the homes and onto the servitude behind the Mitters' home. Now, because of the higher elevation of the servitude and the lots around it, the water runs onto the Mitters' property and stays there.
Mr. Oubre stated that he was a real estate appraiser, and also as a developer and seller of properties. He testified that the drainage problems the Mitters have are unique. He explained that the drainage problems were not a result of natural flow. The water is coming from the street and from the 18 inch culvert, and is "ponding" on the Mitters' property. Mr. Oubre stated that, "it wasn't designed to have any place to go, or if it was, when they blocked up the canal it has no place to go." According to Mr. Oubre's testimony, this water "has to be moved," and the landowner cannot do it.
While he was reluctant to give an appraisal of what the property is now actually worth, he did state:
I'm telling you that this property could be so impacted by this, when you start to disclose this information, I have ponding water, I have mosquito problems, I have other problems that are associated with this, I may not be able to market this property effectively at all.
In conclusion, Mr. Oubre testified that his "subjective guess" on devaluation of the property would be 20 to 30%.
It is clear from the trial judge's well written reasons that he gave careful consideration to all testimony in calculating a proper award. The trial judge stated:
In arriving at what this court considers a fair amount of damages, careful consideration was given to the conclusions of both appraisers as well as the Mitters' description of their injuries. Mr. Oubre estimated the plaintiffs' damage to be 20-30% of the total value of the property. This court calculated the affected area to be 20% which amounts to $65,000.00. This amount was further discounted by 50%, (32,500.00) taking into consideration Mr. Tatche's testimony that generally property values are not diminished by street flooding. It has to be noted however, that this situation goes beyond street flooding. Uncontradicted testimony suggested the water actually sits in plaintiffs' yard for extended periods of time. Also the court could not overlook Mr. Oubre's testimony that properties with similar problems remained on the market for two years. Damages also included $30,000.00 as the cost to cure, as per Parish Engineer, C.J. Savoie, and *268 $7,500.00 awarded for each of the parties' mental anguish.
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Jones v. Phillips, 03-636 (La.App. 5 Cir. 11/12/03), 861 So.2d 618, 623, writ denied, 03-3421 (La.2/20/04), 866 So.2d 832.
Further, we find no support for defendants' contention that because plaintiffs' use of insecticide spray caused the erosion in the drainage ditch in front of plaintiffs' home. Further, we are not persuaded that the sale of an adjacent piece of property for the appraised value in 2002 is sufficient to conclude that the trial judge's finding of facts are "manifestly erroneous" or "clearly wrong." Id. The adjacent property was an empty lot which can be graded to a height sufficient to ward off any drainage problems. That is not the case with the property on which the Mitters' home is situated.
Finally, we reject also defendants' contention that the trial judge erred in denying their request for a new trial. As pointed out by the trial judge, again in a well-written and well-analyzed reasons for judgment, the installation of a pumping station relied upon by defendants, as a possible remedy (which would be installed several years later) is dependant on several questionable factors such as availability of funding, or priority of project development and is understandably too conjectural.
Having so concluded, we affirm the judgment of the trial court.
The plaintiffs have also filed an appeal in this matter seeking an award of attorney fees. In the original petition, plaintiffs made a claim of illegal taking of their property pursuant to La. R.S. 13:5111. Plaintiffs assert they are entitled to attorney fees in accordance with the above cited statute which provides in pertinent part:
A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding.
(emphasis added)
We agree and remand the matter for the trial judge's determination of "reasonable attorney fees" as set forth in the statute.
AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.
ROTHSCHILD, J., concurs in part and dissents in part.
CHEHARDY, J., dissents.
CANNELLA, J., dissents for reasons set forth by Judge CHEHARDY.
ROTHSCHILD, J., concurring in part and dissenting in part.
I concur with the majority's finding that St. John Parish ("the Parish") is not *269 immune from liability under LSA-R.S. 9:2798.1. I agree with the Parish that the decision to regulate drainage is a discretionary act within the lawful power of the Parish. R.S. 33:1236(13) provides that parish authorities shall have the power "[t]o construct and maintain drainage, drainage ditches, and drainage canals; to open any and all drains which they may deem necessary and to do and perform all work in connection therewith." (Emphasis added.) Although the Parish is not required to perform particular drainage projects, once the decision is made to do so, the Parish has an obligation to perform the project in a reasonable manner without negligence. See Judge Lemmon's concurrence in McCloud v. Parish of Jefferson, 383 So.2d 477 (La.App. 4th Cir.1980). See also Williams v. City of Baton Rouge, 98-1981 (La.4/13/99), 731 So.2d 240. Accordingly, I agree with the majority and would affirm the trial court's finding that St. John Parish does not have statutory immunity under the facts of this case.
I also concur with the majority opinion in all other respects, except the award of $32,000 to plaintiffs for diminution in value. I do not believe that plaintiffs presented sufficient evidence to prove that they suffered a $32,000 diminution in the value of their property. At trial, it was established that plaintiffs had sold a portion of their property while this lawsuit was pending for full market value. Because I believe that plaintiffs have not shown a $32,000 diminution in the value of their property, I respectfully dissent from the majority's decision to uphold this portion of plaintiffs' award.
CHEHARDY, J., dissenting.
I respectfully dissent. La. R.S. 9:2798.1(B) reads, "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." (Emphasis added). Further, it is basic to our law that the word "shall" is mandatory. La. R.S. 1:3. Thus, according to my reading of the statute, public entities, like St. John the Baptist Parish, are immune from liability for policymaking or discretionary acts within the course and scope of their lawful power.
Furthermore, I cannot agree with either the trial judge's or the majority's approval of language in the concurrence in McCloud v. Jefferson Parish, 383 So.2d 477, (La.App. 4 Cir.1980). In McCloud, the "the sole issue is the sufficiency of [the plaintiffs] pleadings to state a cause of action." Id. at 478. The majority found that the plaintiffs had stated a cause of action against the Parish for damages to their property for lack of an effective drainage system. In his concurrence in that case then Judge Lemmon wrote,
Once a governmental body ... undertakes to provide drainage or to make general improvements in an existing system, it has a duty to perform this function according to reasonable standards and in a manner which does not cause damage to particular citizens. This duty is based on La.C.C. art. 2315 and on traditional tort notions of fault, causation and damage to another.
That language seeks to create an exception to the general rule of statutory immunity for public entities. It is well established, however, that where it is attempted to establish an exception to a general rule, strict construction is required and the exception is not to be recognized unless it is clearly established. Bradley v. Burgis, 25 So.2d 753, 755 (La.App.Orleans 1946). In my opinion, the exception in question here is not clearly established and, thus, this *270 Court should not recognize that exception. In this case, I would reverse the trial court judgment in favor of the plaintiffs under La. R.S. 9:2798.1.
NOTES
[1] A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.